UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LYDIA DIANE JONES,

               Plaintiff,

      v.

MAGISTRATE JUDGE MARK GRISANTI
*et al.*,

               Defendants.

_____

          22-CV-145-LJV
          DECISION & ORDER

On February 18, 2022, the *pro se* plaintiff, Lydia Diane Jones, commenced this action, asserting claims related to a purportedly fraudulent mortgage; state court foreclosure proceedings that ultimately resulted in her eviction and the sale of her home; and her arrest as a trespasser when she returned to that property.[1]  *See* Docket Item 1; Docket Item 11 (amended complaint); *see also* Docket Items 5 and 7 (motions to amend complaint to include additional claims).  Jones sued a number of parties allegedly involved in those events: New York State Supreme Court Justice Mark J. Grisanti; the State of New York; the New York State Bar Association; Newrez/PHH Mortgage Services/PHH Mortgage Corporation 1 Mortgage ("PHH Mortgage")[2];

_____

[1] Jones also moved for a temporary restraining order, a preliminary injunction, and an expedited hearing to "block any further foreclosure action against the property in dispute."  Docket Item 3 at 1, 8; *see also* Docket Item 1 at 16 (asking this Court to "enjoin the foreclosure sale that was on December 3, 2021").  The Court denied that motion because it lacked jurisdiction to grant the requested relief.  Docket Item 4. Jones then filed two additional motions seeking the same relief, Docket Items 9 and 12, and the Court again denied those motions, Docket Items 10 and 13.

[2] Although Jones names "Newrez/PHH Mortgage Services/PHH Mortgage Corporation 1 Mortgage" as a defendant, Docket Item 11 at 1 (some capitalization omitted), the corporation's full name appears to be simply "PHH Mortgage Corporation,"

Robertson, Anschutz, Schneid, Crane & Partners, PLLC ("Robertson PLLC"), a law firm; two of Robertson PLLC's attorneys, Sara Z. Boriskin and Samantha Sandler; four individuals involved in the sale of Jones's property; and the Amherst Police Department and several of its officers. *See* Docket Items 1, 5, 7, and 11. Jones also moved to proceed *in forma pauperis* ("IFP")—that is, as a person who should have the prepayment of the ordinary filing fee waived because she cannot afford it. Docket Item 2.

After this Court granted Jones's IFP motion, Docket Item 4, it screened both her complaint, Docket Item 1, as supplemented by her subsequent motions to amend that complaint, Docket Items 5 and 7, and her amended complaint, Docket Item 11, under 28 U.S.C. § 1915(e)(2). *See* Docket Item 8 (screening complaint); Docket Item 23 (screening amended complaint). The Court dismissed some of Jones's claims[3] but allowed several others to proceed to service. *See* Docket Items 8 and 23. The claims that proceeded—and remain at issue here—can be grouped into two relatively broad

---

*see* Docket Item 38 at 1. As noted, the entity is referred to as "PHH Mortgage" throughout this opinion.

[3] More specifically, in its first screening order, the Court dismissed Jones's claims under the Administrative Procedure Act, the Foreign Agents Registration Act, and 42 U.S.C. § 1983, as well as her claims against Justice Grisanti and the New York State Bar Association. Docket Item 8. In its second screening order, the Court dismissed Jones's claims against the State of New York, the four individuals involved in the sale of her property, the Amherst Police Department, and—to the extent Jones had reasserted them in her amended complaint—her claims against Justice Grisanti. Docket Item 23. The Court also dismissed Jones's claims for forgery, real estate deed fraud, conspiracy to commit real estate deed fraud, obstruction of justice, and federal criminal conspiracy, as well as her claims under 42 U.S.C. §§ 1985-1986 and the Racketeer Influenced and Corrupt Organizations Act. *Id.* And it allowed Jones's section 1983 claims to proceed against the unnamed Amherst police officers, but dismissed them as against Sandler, Boriskin, Robertson, and PHH Mortgage. *Id.*

categories: (1) Jones's claims under the Fair Debt Collection Practices Act ("FDCPA") and New York State law against Robertson PLLC, Boriskin, Sandler, and PHH Mortgage ("the mortgage defendants") related to Jones's mortgage and the foreclosure proceedings against her; and (2) Jones's section 1983 claims against the individual Amherst police officers ("the Amherst police defendants")[4] related to her arrest.  *See* Docket Items 8 and 23.

On June 21, 2023, Robertson PLLC, Boriskin, and Sandler ("the Robertson defendants") moved to dismiss the complaint.  Docket Item 37.  On the same day, PHH Mortgage likewise moved to dismiss.  Docket Item 38.  About two months later, the Amherst police defendants moved to dismiss as well.  Docket Item 51.  Jones then responded to all three motions, *see* Docket Items 58 and 59; *see also* Docket Item 60 (this Court's construing Jones's filings as responses to the motions to dismiss), and the mortgage and Amherst police defendants replied, Docket Items 63, 66, and 67.[5]

─────────────

[4] Jones's amended complaint does not name the individual Amherst police officers involved in her arrest.  Docket Item 11.  As part of its second screening order, this Court issued a *Valentin* order to the Town of Amherst directing it to identify the officers involved.  Docket Item 23 at 14-15.  In response, the Town named Lieutenant Thomas Brown; Investigator Bradley Canzoneri; Investigator Lucas Kieffer; Officer Grazyna Arnold; Officer Alicia May; Officer Stacey Hachten; and Officer Novica Vukovic. Docket Item 32.

[5] Jones subsequently filed a motion to strike the notice of appearance of the Robertson defendants' counsel, Joseph F. Battista III.  Docket Item 68.  While the basis for this motion is somewhat unclear, Jones appears to argue that the notice of appearance should be stricken because "a corporation or [limited liability corporation] must be represented by a lawyer."  *Id.* at 1.  Jones is correct on that point as a matter of law, *see Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) (explaining that partnerships, corporations, and limited liability companies "may appear in federal court only through a licensed attorney"), but that is of no moment because Robertson PLLC is represented in this action through its counsel, Battista.  *See* Docket Items 16 and 69. Thus, Jones's motion to strike is denied.

For the reasons that follow, the Court grants the mortgage defendants' motions and denies the Amherst police defendants' motion.

## BACKGROUND[6]

In 2004, Jones and her father "purchased a home and obtained"—or attempted to obtain—"a mortgage loan" for about $195,300.  *See* Docket Item 1 at ¶ 2.1; Docket

---

Jones attached a number of exhibits to her motion to strike, *see* Docket Item 68 at 6-47, and she subsequently filed an affidavit, Docket Item 70, and two "notices of claim" that include some of the same documents, Docket Items 71 and 72 (capitalization omitted).  Some of Jones's assertions in those filings repeat claims made in her complaint and amended complaint, including claims about Justice Grisanti, whom this Court dismissed from this action on the grounds of judicial immunity, Docket Item 8 at 5-7 (dismissing Jones's claims against Justice Grisanti without leave to amend); Docket Item 23 at 6-9 (reiterating previous reasoning in response to claims against Justice Grisanti in Jones's amended complaint), and the Court declines to revisit that issue here.  In any event, a court generally "will not consider . . . factual allegations raised for the first time in a brief in opposition to a motion to dismiss."  *See Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2019 WL 3817190, at *2 n.3 (S.D.N.Y. Aug. 14, 2019).  So to the extent that Jones intends her recent filings, Docket Items 68, 70, 71, and 72, to assert additional factual claims against the remaining defendants, the Court declines to consider them as such.

[6] In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  A complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and internal quotation marks omitted).

The following facts are taken from the amended complaint, Docket Item 11, including its attached exhibits.  In addition, because Jones did not include many of the allegations made in her original complaint, Docket Item 1, in her amended complaint, the Court refers to the original complaint to provide additional context for her claims.  The Court also takes judicial notice of the proceedings in the foreclosure action brought against Jones in New York State Supreme Court, *see Deutsche Bank Nat'l Tr. Co. v. Jones*, Case No. 800319/2015 (Sup. Ct. Erie Cnty. Dec. 26, 2014).  *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (stating that courts "may . . . look to public records, including

Item 11 at 3-4.[7]  That loan, which was "ultimately [acquired] by the Deutsche Bank National Trust Company" ("Deutsche Bank"), was "serviced" by Option One Mortgage Corporation ("Option One").  *See* Docket Item 1 at ¶ 1.2.  Jones "made timely payments" to Option One from 2004 to 2008, and after "the loan was assigned" to American Home Mortgage Servicing, Inc., Jones made payments to PHH Mortgage, a loan servicing company.[8]  *See* Docket Item 1 at ¶ 11.2; *see also* Docket Item 11-1 at 5 (document identifying PHH Mortgage as mortgage loan servicer, albeit based on allegedly fraudulent arrangement).

But Jones had been "tricked" into making those payments because "there was never any loan provided."  Docket Item 1 at ¶ 4.3.  In fact, there were a number of deficiencies with the mortgage: "the bank misrepresented the elements of the alleged agreement"; there was "no bona fide signature on the alleged promissory note"; the "promissory note [wa]s a forgery"; the lender "denied [Jones] equal protection under the

---

complaints filed in state court, in deciding a motion to dismiss"); *Romaka v. H&R Block Mortg. Corp.*, 2018 WL 4783979, at *3 n.4 (E.D.N.Y. Sept. 30, 2018) ("[A c]ourt may take judicial notice of the filings in [a state f]oreclosure [a]ction." (citation omitted)).

[7] Throughout this opinion, references to page numbers for documents on this Court's docket refer to ECF pagination.  Because Jones is somewhat inconsistent in numbering the paragraphs in her amended complaint, the Court refers to the relevant page, rather than paragraph number, in citing it.  Some capitalization has been omitted when quoting the complaint and amended complaint.

[8] Jones's amended complaint identifies the entity to which she made payments as "Ocwen Loan Servicing, LLC Mortgage, Newrez C/O PHH Mortgage Services."  Docket Item 1 at ¶ 11.2.  Although her amended complaint is not entirely clear on this point, she appears to be referring to the fact that PHH Mortgage is the "successor by merger" of Ocwen Loan Servicing, LLC ("Ocwen").  *See Powell v. Ocwen Loan Servicing, LLC*, 2024 WL 763406, at *1 & n.2 (2d Cir. Feb. 26, 2024) (addressing claims against PHH Mortgage and declining to address claims against Ocwen based on corporate relationship of those entities).  In any event, the amended complaint makes clear that Jones intends to sue PHH Mortgage, not Ocwen.  *See* Docket Item 11 at 1.

law"; and the "mortgage deal was not done according to [Generally Accepted Accounting Principles] in violation of . . . federal law."  Docket Item 11 at 3-4.

In 2014, defendant Boriskin "filed [a] foreclosure summon[s] and complaint" in New York State Supreme Court, Erie County.  *Id.* at 5; *see Deutsche Bank Nat'l Tr. Co. v. Jones*, Case No. 800319/2015, Docket Item 1 (Sup. Ct. Erie Cnty. Dec. 26, 2014).  But Boriskin "signed on to the case as the attorney of record without standing," and she failed to include "an affidavit from an injured party to provide jurisdiction to the court."  Docket Item 11 at 5.  On March 2, 2016, New York State Supreme Court Justice Tracey A. Bannister signed an order entering a default judgment of foreclosure and sale, *see Jones*, Case No. 800319/2015, Docket Item 51 (Sup. Ct. Erie Cnty. Mar. 2, 2016), and on July 28, 2021, former defendant Justice Grisanti signed an amended default judgment of foreclosure and sale, *see id.*, Docket Item 115 (Sup. Ct. Erie Cnty. July 29, 2021).  That amended judgment was improper because, among other deficiencies, Justice Grisanti used his "initials in a space reserved for a signature" and did not include a court seal.  Docket Item 11 at 6-7.

On December 3, 2021, the property was sold when the referee in the foreclosure sale conducted an "illegal sale."[9]  *Id.* at 7.  After the property was sold, Jones continued to challenge the foreclosure proceedings in state court, including by moving to "recuse [Justice Grisanti]."  *Id.* at 7.  Justice Grisanti, however, "refuse[d] to recuse himself" even though he was "actively involved in a lawsuit of wrongful foreclosure"—that is, this case.  *Id.*

---

[9] This Court previously dismissed Jones's claims against the referee, the buyers, and an attorney involved in that sale.  Docket Item 23 at 10 n.15; *see* note 3, *supra*.

On June 10, 2022, a process server tried to serve Jones with documents related to the foreclosure and her eviction from the property.  *Id.* at 8.  Although Jones was not home at the time, the process server filed a false affidavit saying that Jones had been served.  *Id.*  That affidavit swore that the process server had served Jones, but Jones did not match the description of the person who was allegedly served with the notice of eviction.  *Id.*

On August 2, 2022, the "Sheriff['s D]epartment[10] put a 14[-]day notice of eviction on [Jones's] front door."  *Id.*  Jones then "went to the Sheriff['s D]epartment and . . . ask[ed] how [the Sheriff's Department] could get a warrant of eviction without [going to] eviction court."  *Id.*  The Sheriff's Department told Jones to go to "a judge" to "cancel" the eviction.  *Id.*  So Jones "file[d] a[n] order to show cause" in state court to try to stop the eviction.  *Id.*  But Justice Grisanti "refuse[d] to sign the order" or "to give [Jones] a court date."  *Id.* at 9.

About two weeks later, the Sheriff's Department "came to [Jones's] front door and [rang] the door[]bell, started banging on the door[,] . . . yell[ed at Jones to] get out of [the] house[ and] come out[, and] repeated demands [for Jones] to get out[ while] threatening the use of force."  *Id.* at 10.  Eventually, 15 to 20 police vehicles from the Amherst Police Department arrived on the scene, and "the Sheriff['s] Department

---

[10] Jones does not name the Sheriff's Department as a defendant in this action, nor does she identify the specific Sheriff's Department to which she refers, although the Court assumes—given where Jones lived—that it was the Erie County Sheriff's Department.  *See* Docket Item 11.  Jones sometimes refers to the "Sheriff['s] Department" and sometimes to the "Sheriff" or "Sheriffs"; for the sake of simplicity, and because Jones appears to use all three terms to refer to a group of individuals associated with the Sheriff's Department, *see id.*, the Court refers only to "the Sheriff's Department" in summarizing and analyzing the amended complaint in this opinion.

force[d] and busted [Jones's] front doors and remov[ed] the door at the entrance." *Id.*

Jones was allowed to "pack an overnight bag," but the Sheriff's Department "would not

let [Jones] take" her pet turtle from the house. *Id.* Instead, the "Sheriff['s] Department

abandon[ed] . . . the turtle." *Id.*

The next day, Jones returned to the house to feed the turtle and to pick up some

medication and documents that had been left behind. *Id.* The Sheriff's Department had

told Jones that she "would have 30 day[s] to pack and get [her] things" from the house.

*Id.* But at 8:30 a.m., Amherst police officers—more specifically, the Amherst police

officers sued here, *see* Docket Item 32—"bust[ed] in the front door [and] immediately

grabbed [Jones] and put handcuffs on [her,] arrest[ed her,] and put [her] in [the] back of

a police car," Docket Item 11 at 11. The Amherst police defendants also handcuffed

and arrested Jones's goddaughter and took both to a holding center. *Id.* Jones was

kept overnight, but her goddaughter was held longer. *Id.* After Jones "had a[] sudden

anxiety attack and pass[ed] out," she was taken to the hospital where she was

"handcuff[ed] to the bed railing" by Amherst police officers. *Id.* She later was released

from the hospital and taken back to the holding center. *Id.*

Jones's house was sold on December 3, 2021. *Id.* at 12. She was unable to

retrieve her furniture, clothes, and other personal belongings from her home. *Id.* at 11

(bold omitted). Her cat died, and her dog and turtle are missing. *Id.*

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## **DISCUSSION**

### I.   **MORTGAGE DEFENDANTS' MOTION TO DISMISS**

Jones asserts claims against the mortgage defendants under the FDCPA as well as for breach of contract, wrongful foreclosure, slander of title, slander of credit, and negligent and intentional infliction of emotional distress.  Docket Item 11 at 1, 15-18; *see* Docket Item 23 at 13-14 (allowing those claims to proceed to service).  She seeks damages and for an order vacating the state court's judgment of foreclosure.  Docket Item 11 at 9-10, 22-23.  The mortgage defendants say that all of those claims must be dismissed for several reasons.  *See* Docket Items 37-3 and 39.  The Court addresses each of the defendants' arguments as follows.

#### A.   *Rooker-Feldman*

The mortgage defendants first argue that this Court lacks subject matter jurisdiction over Jones's claims against them under the *Rooker-Feldman* doctrine. Docket Item 37-3 at 7-8; Docket Item 39 at 16-18.  According to that doctrine—which is named for the two Supreme Court cases from which it derives—federal district courts have no appellate jurisdiction to review state court decisions.  *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983); *see also*

*Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (noting that "[t]he [*Rooker-Feldman*] doctrine is rooted in the principle that appellate jurisdiction to reverse or modify a state[ ]court judgment is lodged exclusively in the Supreme Court" (alterations, citation, and internal quotation marks omitted)).  In other words, the *Rooker-Feldman* doctrine applies to cases "brought by state[ ]court losers complaining of injuries caused by state[ ]court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The Second Circuit has "articulated a four-part test" for determining whether the *Rooker-Feldman* doctrine applies in a given case.  *Hunter v. McMahon*, 75 F.4th 62, 68 (2d Cir. 2023).  Under that test, a district court cannot exercise jurisdiction if: "(1) the federal[ ]court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Id.* (citation omitted).

The Second Circuit has stressed that "*Rooker-Feldman* applies only when the plaintiff complains of injuries caused by a state court judgment."  *Id.* at 71 (citation and internal quotation marks omitted).  That is, under *Rooker-Feldman*, a district court cannot exercise jurisdiction over claims of injury stemming "from a state[ ]court judgment, even if [the plaintiff] appears to complain only of a third party's actions, when th[ose] actions are produced by a state[ ]court judgment." *Id.* (emphasis omitted).  But "*Rooker-Feldman* does not bar claims based on an opponent's misconduct that precede[d] the state court proceeding[] if the plaintiff['s] alleged injuries were merely

ratified by the state[ ]court judgment[] rather than caused by [it]." *Id.* (emphases omitted). Instead, in such cases, "the connection between the [relevant] state and federal cases" are governed by "the rules of preclusion, which are not jurisdictional."[11] *Id.* at 72.

Under *Rooker-Feldman*, this Court lacks subject matter jurisdiction over some—but not all—of Jones's claims against the mortgage defendants. More specifically, the Court cannot exercise jurisdiction over Jones's claims for wrongful foreclosure and slander of title because all four of the *Rooker-Feldman* requirements are met with respect to those claims. But Jones's other claims survive the *Rooker-Feldman* bar.

An analysis of the four factors delineated above demonstrates why this is so. First, Jones lost in state court when Justice Grisanti entered an amended judgment of foreclosure and sale against her on July 29, 2021.[12] *See Jones*, Case No. 800319/2015, Docket Item 115; *Hunter*, 75 F.4th at 68 (first requirement). Moreover, Jones's claims for wrongful foreclosure and slander of title effectively "complain[] of injuries caused by" that judgment of foreclosure and ask this Court to "review and reject[]" it. *Hunter*, 75 F.4th at 68 (second and third requirements); *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) (summary order) (plaintiff's claims that state judgment of foreclosure was void and for slander of title were

---

[11] The Court considers the application of the preclusion rules below. *See* Section I.B, *infra*.

[12] As noted above, Justice Bannister previously had entered a judgment of foreclosure and sale against Jones on March 2, 2016. *See Jones*, Case No. 800319/2015, Docket Item 51. The Court assumes without deciding that the amended judgment issued by Justice Grisanti is the relevant one for the sake of determining the Court's subject matter jurisdiction.

"barred by the *Rooker-Feldman* doctrine" because they "effectively request[ed] that the federal district court rule that the [state] judgment was void"); *Vossbrinck*, 773 F.3d at 427 (*Rooker-Feldman* barred plaintiff's request that "the federal court . . . grant him title to his property [on the grounds that] the foreclosure judgment was obtained fraudulently" because plaintiff was "asking the federal court to determine whether the state judgment was wrongfully issued"); *Romaka v. H&R Block Mortg. Corp.*, 2018 WL 4783979, at *4 (E.D.N.Y. Sept. 30, 2018) (finding plaintiff's wrongful foreclosure claim barred by *Rooker-Feldman*).

Finally, "the state judgment was rendered before the district court proceedings commenced." *Hunter*, 75 F.4th at 68 (fourth requirement).  The amended judgment of foreclosure was entered on July 29, 2021, *see Jones*, Case No. 800319/2015, Docket Item 115, and Jones did not appeal that judgement within the 30 days allowed under New York State law, *see Jones*, Case No. 800319/2015; N.Y. C.P.L.R. § 5513 (setting time limits for appealing judgements).  And because Jones did not commence this action until February 18, 2022, *see* Docket Item 1—long after her time to appeal expired—the state judgment was "rendered" for the purposes of *Rooker-Feldman* before the federal proceedings were initiated.  *See Borrani v. Nationstar Mortg. LLC*, 820 F. App'x 20, 22 (2d Cir. 2020) (summary order) ("The state[ ]court judgment of foreclosure was rendered before Borrani began federal proceedings because she filed her federal complaint . . . more than [30] days after the . . . judgment of foreclosure and sale was entered."); *Powell v. Ocwen Loan Servicing, LLC*, 840 F. App'x 610, 612 (2d Cir. 2020) (finding fourth *Rooker-Feldman* requirement met when plaintiffs' "time to appeal the judgment [of foreclosure] had passed"); *cf. Hunter*, 75 F.4th at 69-70 & n.9 (holding that

"[i]f a federal[ ]court plaintiff's state[ ]court appeal remains pending when she files her

federal suit, the state[ ]court proceedings have not ended and *Rooker-Feldman* does

not apply" (citing holdings in *Borrani* and *Powell* with approval)).

      Thus, this Court cannot exercise jurisdiction over Jones's claims for wrongful

foreclosure and slander of title, and those claims are dismissed without prejudice.[13]  But

as noted above, *Rooker-Feldman* bars only those claims that meet all four of the

delineated requirements—and more specifically, "only when the plaintiff complains of

injuries caused by a state court judgment," not about conduct that was the subject of the

state litigation.  *Hunter*, 75 F.4th at 71 (citation and internal quotation marks omitted).

Indeed, the Second Circuit has held that although *Rooker-Feldman* bars federal courts

from reviewing foreclosure judgments, it does not bar claims for damages for fraudulent

conduct allegedly related to or underlying foreclosure proceedings.  *See Vossbrinck*,

773 F.3d at 427 (holding that "[t]o the extent [the] *pro se* complaint can be liberally

construed as asserting fraud claims that . . . seek damages from [the d]efendants for

injuries [the plaintiff] suffered from their alleged fraud, the adjudication of which does not

require the federal court to sit in review of the state court judgment," those claims are

not barred by *Rooker-Feldman*).

      The Court therefore rejects the mortgage defendants' argument that *Rooker-*

*Feldman* bars Jones's FDCPA, slander of credit, breach of contract, and negligent or

intentional infliction of emotional distress claims.[14]

---

[13] To the extent that Jones asks this Court to vacate the judgment in the state foreclosure action, Docket Item 11 at 9, this Court lacks subject matter jurisdiction over that claim under *Rooker-Feldman* for the reasons explained.

[14] Jones's claims for slander of credit and intentional and negligent infliction of emotional distress are ill-defined.  She asserts that "the actions and inactions of the

B.    Preclusion

The Court next considers whether preclusion bars Jones's claims against the

mortgage defendants.  The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal

district courts to "give the same preclusive effect to a state[ ]court judgment as another

court of that [s]tate would give [that judgment]."  *Exxon Mobil Corp.*, 544 U.S. at 282.

So here, New York preclusion law governs the preclusive effect this Court must afford to

the judgment of foreclosure entered against Jones in New York State Supreme Court

under the doctrines of *res judicata* and collateral estoppel.  *See Buczek*, 2021 WL

2917684, at *4 ("To determine the effect of a state court judgment, federal courts,

including those sitting in diversity, are required to apply the preclusion law of the

rendering state." (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000)));

*Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008) ("Because the

prior decision was rendered by a New York state court, New York's *res judicata* and

collateral estoppel doctrines govern.").

---

defendants have impaired [Jones's] credit, causing [Jones] to lose the ability to have
good credit" and that "[t]he defendants have intentionally and negligently taken illegal
actions which have caused [her] severe emotional distress."  Docket Item 11 at 18.  To
the extent that Jones seeks relief for slander or emotional distress caused by the state
foreclosure judgment itself, those claims are barred by *Rooker-Feldman*.  *See
Ramnarine v. Johnson*, 2019 WL 5309994, at *2 (E.D.N.Y. Oct. 21, 2019) (court lacked
jurisdiction under *Rooker-Feldman* over plaintiff's claims for slander of credit that were
based on defendants' bringing of a foreclosure action against him); *Gifford v. United N.
Mortg. Bankers, Ltd.*, 2019 WL 2912489, at *6 (S.D.N.Y. July 8, 2019) ("Although
plaintiff claims her damages are for emotional distress and expenses incurred in
defending the foreclosure action, such injuries, assuming they exist, were directly
caused by the adverse judgment in the foreclosure action and, thus, are barred by the
*Rooker-Feldman* doctrine." (alterations, citation, and internal quotation marks omitted)).
But to the extent Jones asserts claims for slander and emotional distress based on the
defendants' underlying conduct, they are not so barred and are further addressed
below, *see* Section I.D, *infra*.

The mortgage defendants argue that even if this Court has jurisdiction over some or all of Jones's claims against them, all such claims are barred by *res judicata*. Docket Item 37-3 at 8-11; Docket Item 39 at 14-16. For the reasons that follow, this Court holds that *res judicata* bars Jones's claims against PHH Mortgage but not her claims against the Robertson defendants.

### 1. *Res Judicata*

Under the doctrine of *res judicata*, also known as claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Buczek*, 2021 WL 2917684, at *5.

New York takes a "transactional approach to the rule," so "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Josey v. Goord*, 9 N.Y.3d 386, 389-90, 880 N.E.2d 18, 20 (2007) (citation and internal quotation marks omitted). In other words, "[u]nder New York law, *res judicata* bars a claim where (1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Lorick v. Kilpatrick Townsend & Stockton LLP*, 2021 WL 7906510, at *9 (E.D.N.Y. Aug. 20, 2021) (citations and internal quotation marks omitted), *report and recommendation adopted*, 2022 WL 1104849 (E.D.N.Y. Apr. 13, 2022); *see Dekom v. Fannie Mae*, 846 F. App'x 14, 19 (2d Cir. 2021) (summary order); *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122, 894 N.E.2d 1, 12

(2008).  "*Pro se* litigants are equally bound by the doctrine of *res judicata*."  *Romaka*,

2018 WL 4783979, at *5.

The first *res judicata* requirement clearly is met here with respect to both PHH

Mortgage and the Robertson defendants.  There is a previous adjudication: the

judgment of foreclosure entered by the New York State Supreme Court, *Jones*, Case

No. 800319/2015, Docket Item 115, which is a "court of competent jurisdiction,"[15] *see*

*Borrani*, 820 F. App'x at 22 (noting that to have preclusive effect, a prior judgment must

be issued by "a court of competent jurisdiction"); *Hansen v. Miller*, 52 F.4th 96, 100 (2d

Cir. 2022) (same).[16]  And although that judgment was obtained by Jones's default,

---

[15] Jones argues that the state court lacked jurisdiction in the foreclosure action between she is both a "Yamas[]ee Native American" as well as a "State National." Docket Item 11 at 6; *see also* Docket Item 1 at 19-21.  With respect to Jones's first argument, the Court notes that while "states broadly lack authority to regulate the activity of tribal members *on reservation lands*," *Cayuga Nation v. Tanner*, 6 F.4th 361, 370 n.7 (2d Cir. 2021) (emphasis added), Jones does not allege that the property at issue here was part of a reservation, *see generally* Docket Items 1, 5, 7, and 11.  Nor did Jones's identity deprive the New York State Supreme Court of jurisdiction.  Such courts possess "jurisdiction over, *inter alia*, 'private civil claims by Indians against Indians.'"  *Cayuga Nation v. Jacobs*, 44 Misc. 3d 389, 391, 986 N.Y.S.2d 791, 793 (Sup. Ct. Seneca Cnty. 2014) (quoting *People v. Anderson*, 137 A.D.2d 259, 270, 529 N.Y.S.2d 917, 923 (4th Dep't 1988)); *see also Alexander v. Hart*, 64 A.D.3d 940, 942, 884 N.Y.S.2d 181, 184 (3d Dep't 2009) ("State courts do not violate an Indian nation's sovereign right to self-government by exercising jurisdiction over disputes between private civil litigants on matters that have no bearing on the internal affairs of the tribal nation's government." (collecting cases)).

[16] Second, to the extent that Jones intends to argue that she is some variety of "sovereign citizen" in identifying as a "State National," *see* Docket Item 11 at 6; Docket Item 1 at 19-21, the Court notes that district courts in this circuit generally "have rejected jurisdictional claims from 'sovereign citizens' as patently frivolous."  *Ramos v. Semple*, 2019 WL 2437851, at *4 (D. Conn. June 11, 2019) (collecting cases).  This Court similarly declines to entertain such an argument here.

[16] *Hansen* describes the requirement that the judgment be entered "by a court of competent jurisdiction" as a separate requirement, so that there are four preconditions

*Jones*, Case No. 800319/2015, Docket Item 115, that does not mean that it was not "on the merits," *Lorick*, 2021 WL 7906510, at *9.  On the contrary, "[u]nder New York law, it is established that a decision granting a judgment of foreclosure and sale on default constitutes a decision on the merits."  *Council v. Better Homes Depot, Inc.*, 2006 WL 2376381, at *4 (E.D.N.Y. Aug. 16, 2006), *adhered to on denial of reconsideration*, 2007 WL 680768 (E.D.N.Y. Mar. 2, 2007); *see also Niles v. Wilshire Inv. Grp., LLC*, 859 F. Supp. 2d 308, 338-39 (E.D.N.Y. 2012) ("A judgment of foreclosure and sale obtained by default constitutes a decision on the merits."); *Dekom*, 846 F. App'x at 19 (holding that "[a] foreclosure default judgment [wa]s a final judgment on the merits").

Moreover, Jones's claim that the state action was fraudulent does not change the analysis.  Indeed, in *Dekom*, the Second Circuit treated a default judgment of foreclosure as a "previous adjudication" for the purposes of its *res judicata* analysis notwithstanding the fact that the plaintiff claimed that the judgment had been obtained by fraud.  846 F. App'x at 18-20.

But a prior judgment on the merits is not enough.  As already noted, "the previous action [also must] involve[] the same adverse parties or those in privity with them."  *Lorick*, 2021 WL 7906510, at *9.  Jones, of course, is the plaintiff in this action and was a defendant in the prior one.  *Jones*, Case No. 800319/2015.  But the sole plaintiff in the prior action—Deutsche Bank—is not a defendant in this case.  So whether or not *res judicata* bars Jones's claims against the mortgage defendants turns on whether or not each defendant is in privity with Deutsche Bank.

_____

for the application of *res judicata*, rather than three.  52 F.4th at 100-01.  But with respect to the analysis here, that is a distinction without a difference.

"Under New York law, 'privity is not susceptible to a hard-and-fast definition.'"
*Lipman v. Rodenbach*, 852 F. App'x 578, 581 (2d Cir. 2021) (summary order) (quoting
*Applied Card Sys.*, 863 N.Y.S.2d at 626, 894 N.E.2d at 12).  "Ultimately, [New York
courts] determine whether the severe consequences of preclusion flowing from a finding
of privity strike a fair result under the circumstances," taking into account "the policies
that *res judicata* is designed to protect," such as "a party's right to rely upon the finality
of the results of previous litigation."  *Applied Card Sys.*, 863 N.Y.S.2d at 626-27, 894
N.E.2d at 13 (italics added).  Courts have found that "privity extends to parties 'who are
successors to a property interest, those who control an action although [are] not formal
parties to it, [and] those whose interests are represented by a party to the action.'"
*Yeiser*, 535 F. Supp. 2d at 423 (quoting *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277,
265 N.E.2d 739, 743 (N.Y. 1970)).

In light of that law, PHH Mortgage clearly is in privity with Deutsche Bank for the
purposes of *res judicata*.  As already noted, Jones took out a mortgage with her father
in 2004, Docket Item 1 at ¶¶ 1.2, 2.1; that loan was acquired by Deutsche Bank; and
from 2008 onward, the loan was serviced either by Ocwen or by Ocwen's "successor by
merger," PHH Mortgage, *id.* at ¶ 11.2; *see* note 8, *supra*.  As such, PHH Mortgage's
"interest was represented" by Deutsche Bank in the state foreclosure action.  *See
Yeiser*, 535 F. Supp. 2d at 417-19, 423 (finding that loan servicing company was "in
privity" with mortgage holder that had obtained judgment of foreclosure against plaintiff
in state court because that company "serviced the loan at the time . . . the foreclosure
action [was commenced]"); *cf. Dekom*, 846 F. App'x at 20 (finding Fannie Mae in privity
with the "mortgage loan servicers" that "pursue[d] the foreclosure action on its behalf").

The Robertson defendants argue that they also are in privity with Deutsche Bank, apparently because they represented it in the foreclosure action. *See* Docket Item 37-3 at 5, 10; *see generally Jones*, Case No. 800319/2015. But that alone is not enough to establish privity. Instead, New York courts have held that "an attorney *may* be found to be in privity with the parties that [the attorney] represents" only "when the particular circumstances otherwise satisfy the requirements of collateral estoppel [or *res judicata*]." *Anonymous v. N.Y. State Just. Ctr. for the Prot. of People With Special Needs*, 167 A.D.3d 113, 117, 89 N.Y.S.3d 346, 351 (3d Dep't. 2018) (emphasis added) (finding that entity was "in privity" with former client because entity's role was unlike "that of an ordinary attorney, who typically acts as a disinterested advocate with the purpose of representing the [client's] interests . . . rather than [the attorney's] own"); *Goodman v. Solack Ests., Inc.*, 78 A.D.2d 512, 513, 432 N.Y.S.2d 5, 6 (1st Dep't 1980) ("We do not believe that collateral estoppel is appropriately applied to a law firm on the basis of a judgment entered against a client in a proceeding in which the law firm was not a litigant but was acting solely as counsel."); *Lyons v. Med. Malpractice Ins. Ass'n*, 275 A.D.2d 396, 397, 713 N.Y.S.2d 61, 62 (2000) (holding that "[u]nder the settled principles of law regarding *res judicata* and collateral estoppel, [attorneys]—who were not parties to [a] medical malpractice action—c[ould ]not be bound by the verdict" entered in that action). Indeed, in *Hansen v. Miller*, the Second Circuit held that an attorney who represented a client in a foreclosure action was not in privity with that

client under New York law because he "did not have a cognizable *personal* interest in the subject of the [prior] action."[17]  52 F.4th at 101 (emphasis added).

The Robertson defendants do not argue that they had a "cognizable personal interest" in the state foreclosure action against Jones, nor do they point to any particular circumstances indicating that a finding of privity would be appropriate here.  *See* Docket Item 37-3 at 8-11.  Instead, they merely state, in conclusory fashion, that *res judicata* "applies . . . to those in privity."  *Id.* at 10.  But in the absence of any proffered reason why this Court should find them to be in privity here, this Court declines to do so.

Third, and finally, the claims that Jones presses here are those that "were, or could have been, raised in the prior action."  *Lorick*, 2021 WL 7906510, at *9.  As already explained above, under New York law, the causes of action between two suits need not be the same for *res judicata* to apply.  Instead, the question is whether "the claims are based on the same set of facts."  *Harris v. BNC Mortg., Inc.*, 737 F. App'x 573, 576 (2d Cir. 2018) (summary order).  In *Harris*, "[b]oth the [federal] complaint" brought by the plaintiff and "the [state] foreclosure action involved allegations relating to the origin of [the plaintiff's] mortgage and its subsequent assignment."  *Id.*  The Second

---

[17] Some district courts have suggested that an attorney-client relationship itself is enough to support a finding that two parties were in privity for *res judicata* purposes. *See, e.g.*, *Lorick*, 2021 WL 7906510, at *9 (mere fact that bank bringing foreclosure proceeding was represented in that action by a law firm and several of its lawyers was enough to support finding that the latter were "in privity" with the former); *Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 701 (S.D.N.Y. 2014) ("[C]ourts have held that the attorney-client relationship itself establishes privity." (citation omitted)).  But this Court is bound to follow New York State law on this issue, *see Buczek*, 2021 WL 2917684, at *4, as well as the Second Circuit's interpretation of that law in *Hansen*, *see Adelphia Recovery Tr. v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 309 (S.D.N.Y. 2009) ("In the Second Circuit, a federal district court will conclusively defer to a federal court of appeals' interpretation of the law of a state that is within its circuit." (citation and internal quotation marks omitted)).

Circuit found that enough to satisfy the third *res judicata* requirement.  *Id.*; *see also*

*Dekom*, 846 F. App'x at 20 (third requirement satisfied in case in which plaintiff's

"federal complaint allege[d] that the 2013 foreclosure action was fraudulently brought

and prosecuted [against him]" because "[the plaintiff's] claim rest[ed] on the same [set

of] facts that [the three defendants in the federal action had been] obliged to show to

secure foreclosure" in the state action).

In sum, *res judicata* bars Jones's claims against PHH Mortgage but not against

the Robertson defendants.

### C.    Collateral Estoppel

The Robertson defendants also argue that collateral estoppel bars Jones's

claims against them.[18]  Docket Item 37-3 at 10-11.

"The doctrine of collateral estoppel precludes a party from relitigating in a

subsequent action or proceeding an issue clearly raised in a prior action or proceeding

and decided against that party or those in privity, whether or not the tribunals or causes

of action are the same."  *Williams v. N.Y.C. Transit Auth.*, 171 A.D.3d 990, 991, 97

N.Y.S.3d 692, 695 (2d Dep't 2019) (citation and internal quotation marks omitted); *see*

*Romaka*, 2018 WL 4783979, at *5.  But "under New York law, collateral estoppel

forecloses only those issues that have been 'actually litigated and determined in a prior

action,' and '[a]n issue is not actually litigated if there has been a default.'"  *Yoon v.*

*Fordham Univ. Fac. & Admin. Ret. Plan*, 263 F.3d 196, 202 n.7 (2d Cir. 2001) (alteration

---

[18] PHH Mortgage does not argue that collateral estoppel bars Jones's claims against it, *see* Docket Item 39, but those claims are barred by *res judicata* for the reasons explained, *see* Section I.B, *supra*.

in original) (quoting *Pigliavento v. Tyler Equip. Corp.*, 233 A.D.2d 810, 811, 650

N.Y.S.2d 414, 415 (3d Dep't 1996)); *see also Gianatasio v. D'Agostino*, 862 F. Supp. 2d

343, 350 (S.D.N.Y. 2012) ("[T]he general rule is well-established that default judgments

lack issue-preclusive effect." (alteration in original) (quoting *In re Adler, Coleman*

*Clearing Corp.*, 205 F. App'x 856, 857 (2d Cir. 2006))).  A default judgment of

foreclosure was entered against Jones.  *Jones*, Case No. 800319/2015, Docket Item

115; *see also id.*, Docket Item 51.  And while such judgments may have a preclusive

effect under the doctrine of *res judicata*, the same is not true under the doctrine of

collateral estoppel.  *See Giantasio*, 862 F. Supp. 2d at 250 (finding that state default

judgment triggered *res judicata* but not collateral estoppel).  Collateral estoppel

therefore does not bar Jones's claims here.

### D.    Failure to State a Claim

Finally, the Robertson defendants argue that Jones's claims against them should

be dismissed for failure to state a claim.  Docket Item 37-3 at 12-15.  For the reasons

that follow, the Court agrees.[19]

### 1.    FDCPA Claim

Jones asserts that the defendants have violated the FDCPA by "engag[ing] in

abuse, threats, coercion, misrepresentation, fraud, harassment, unfair means, and

deception to collect a debt."  Docket Item 11 at 6.  With respect to the Robertson

---

[19] Jones does not always specify which defendants committed which violations. Because the Court previously dismissed many of the defendants named in this action, *see* Docket Items 8 and 23, and because the Court has determined that *res judicata* bars Jones's claims against PHH Mortgage, it analyzes her remaining mortgage-related claims against only the Robertson defendants.

defendants in particular, she states that "[t]he attorneys"—presumably Boriskin and Sandler—"are misrepresenting themselves as working for a lender when they are illegally collecting as . . . [third] party debt collector[s] in violation of the [FDCPA]." *Id.* at 17.

"The FDCPA's purpose is, in part, 'to eliminate abusive debt collection practices by debt collectors.'" *Goodman v. Bd. of Managers of Harborview Condo.*, 2023 WL 6977450, at *3 (S.D.N.Y. Oct. 23, 2023) (quoting 15 U.S.C. § 1692(e)), *appeal dismissed* (Feb. 28, 2024). "To state a[n] FDCPA claim, a plaintiff must show that: (1) [the plaintiff] has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Id.* (citations omitted). "A plaintiff must bring a[n] FDCPA action 'within one year from the date on which the violation occurs.'" *Weaver v. Boriskin*, 751 F. App'x 96, 98-99 (2d Cir. 2018) (summary order) (quoting 15 U.S.C. § 1692k(d)).

The Robertson defendants argue that Jones cannot assert any claims under the FDCPA because the "one[-]year statute of limitations" clearly has run. Docket Item 37-3 at 12-13. More specifically, they argue that because the violations that Jones says they committed occurred several years before Jones filed this case in February 2022, her FDCPA claims must be dismissed. *Id.* This Court agrees.

Jones's FDCPA claims against the Robertson defendants are not entirely clear, but all of them relate to the filing and prosecution of the state foreclosure action against her. *See* Docket Item 11 at 5-6, 12, 17. Indeed, although Jones states generally that the Robertson defendants violated the FDCPA, the only specific actions she attributes

to them are the filing of certain documents in the state court action.  *See, e.g.*, *id.* at 17 (stating that the Robertson defendants acted "as . . . [third] party debt collector[s] . . . when the attorney[s] filed [an] unlawful foreclosure [action] using a[n invalid] foreclosure statute"); *id.* at 6 (stating that Jones "was subjected to harassment from [four] or [five] attorneys"—presumably including Sandler and Boriskin—"that all signed on [to the foreclosure action] and signed out when they could not prove jurisdiction on the court record").  But the state foreclosure action was filed in December 2014, *see Jones*, Case No. 800319/2015, Docket Item 1 (Sup. Ct. Erie Cnty. Dec. 26, 2014), and a judgment of foreclosure and sale was entered on March 2, 2016, *id.*, Docket Item 51.  In other words, both occurred several years before Jones commenced this case in 2022, Docket Item 1.

It is true that an amended judgment was entered on July 29, 2021, *Jones*, Case No. 800319/2015, Docket Item 115, and that the Robertson defendants continued to file documents in state court until and even after that, *see generally Jones*, Case No. 800319/2015.  Nonetheless, all of the conduct about which Jones complains here—that is, fraudulently bringing a foreclosure action—happened more than a year before February 2021 and thus, any claims based on that conduct are barred by the statute of limitations.  Moreover, the fact that the lawsuit itself continued is not relevant:  Courts have held that "the statute of limitations on an FDCPA claim premised on the fraudulent filing of a debt[ ]collection suit begins to run when the complaint is filed or when the debtor receives notice of the action, rather than on the filing of any individual documents

within the lawsuit."[20]   *Weaver v. Boriskin*, 2020 WL 13558738, at *3 (E.D.N.Y. Mar. 10, 2020); *see id.* (noting that "[n]o court of appeals has held that debt[ ]collection litigation (or a misleading statement made in connection with that litigation) is a continuing violation of the FDCPA" (collecting cases)).

Of course, if "subsequent filings in an allegedly fraudulently filed debt[ ]collection proceeding . . . independently violate[d] the FDCPA," they would "have their own statutes of limitations." *Id.* But Jones does not allege that here. Instead, her allegations center on the fact that the foreclosure action was fraudulently commenced. *See* Docket Item 11. And so she has failed to state a timely claim against the Robertson defendants for violating the FDCPA, and those claims are dismissed as barred by the statute of limitations.

### 2.  Slander of Credit

As already noted, Jones's claim for slander of credit is somewhat unclear. *See* Docket Item 11 at 18; *see* note 14, *supra*. She says only that "the actions and inactions of the defendants have impaired [her] credit," with the circular result that she has "los[t] the ability to have good credit." Docket Item 11 at 18. She also includes as an exhibit to her amended complaint a 2008 letter sent to her father by American Home Mortgage Servicing, Inc.—not a defendant here—informing him that "a negative credit report

---

[20] According to an affidavit of service filed in the foreclosure action, the summons and complaint were served on Jones on January 15, 2015. *See Jones*, Case No. 800319/2015, Docket Item 7 (Sup. Ct. Erie Cnty. Jan. 22, 2015). Jones asserts that another affidavit of service filed in the state action was fraudulent, Docket Item 11 at 8, but she does not allege that she did not have notice of the initial action, *see generally id.* In any event, it is clear that Jones was aware of the foreclosure action no later than May 2018, when she filed a motion to dismiss the complaint in state court. *See Jones*, Case No. 800319/2015, Docket Item 65 (Sup. Ct. Erie Cnty. May 23, 2018).

reflecting on the borrower's credit record may be submitted to a credit reporting agency if the borrower fails to fulfill the terms of the obligations under the loan."  Docket Item 11-1 at 1-2.

Jones may be claiming that the defendants slandered (or defamed) her credit by "report[ing] to credit bureaus that [she] had defaulted on [her l]oans and that foreclosure proceedings had been commenced."  *See Ferber v. Citicorp Mortg., Inc.*, 1996 WL 46874, at *2 (S.D.N.Y. Feb. 6, 1996) (treating such claims as sounding in defamation).[21] But to the extent that Jones is attempting to bring such a claim, it is preempted by the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.  See Campbell v. Bank of N.Y. Mellon Tr. Co.*, 2012 WL 2952852, at *1, *9 (S.D.N.Y. May 8, 2012) (holding that plaintiffs who sued defendants for "violat[ing] various federal and state laws in the course of administering [the p]laintiffs' mortgage loan and initiating foreclosure proceedings against them" were "unable to establish [the d]efendants' liability as a matter of law on their common law slander of credit claim . . . because the FCRA preempts such state law claims"), *report and recommendation adopted sub nom. Campbell v. Bank of New York Tr. Co.*, 2012 WL 2953967 (S.D.N.Y. July 18, 2012); *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 46-48 (2d Cir. 2011) (holding that "state common law claims . . . for defamation and intentional infliction of emotional distress" are preempted by FCRA).

---

[21] Setting aside its exhibits, the amended complaint does not even mention credit reporting agencies.  *See* Docket Item 11.  But because of Jones's *pro se* status, the Court reads her pleadings liberally to give her the benefit of any doubt.

Jones does not include any other allegations suggesting that the Robertson defendants—or, indeed, any defendants—spread falsehoods about her credit. *See* Docket Item 11. She therefore has failed to state a viable claim for slander of credit.[22]

### 3.     Breach of Contract

Jones asserts that all the defendants—including the Robertson defendants—are liable for breach of contract. Docket Item 11 at 16-17. "To recover on a claim for breach of contract under New York law, 'a plaintiff must prove (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'" *Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S de R L de C.V.*, 627 F. Supp. 3d 408, 419 (S.D.N.Y. 2022) (quoting *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000)); *see also Nassau Operating Co. v. DeSimone*, 206 A.D.3d 920, 926, 171 N.Y.S.3d 528, 535 (2d Dep't 2022) (same).

Jones does not satisfy even the first of those requirements with respect to the Robertson defendants—that is, she does not allege that she and any of the Robertson defendants entered into a contract of any kind. *See* Docket Item 11. Instead, Jones's claims for breach of contract center on an "alleged agreement" that she entered into with "[t]he bank," *id.* at 16-17, and she says that the Robertson defendants represented the bank by "fil[ing] a forged contract in the state foreclosure case," *id.* at 17. But that does not and cannot state a viable claim for breach of contract.

---

[22] As noted above, *see* note 14, *supra*, to the extent that Jones seeks to bring a claim based on the fact that her credit was impacted by the judgment of foreclosure itself, that claim is barred by *Rooker-Feldman*.

As part of her claim, Jones alleges that "[t]he attorneys are misrepresenting themselves as working for a lender when they are illegally collecting as . . . [third] party debt collector[s]." *Id.* She also states that "[t]he contract should be rescinded because the attorneys did not provide full disclosure." *Id.* at 12. Even assuming that both assertions refer to the Robertson defendants, neither suggests that Jones entered in a contract with any attorneys, including the Robertson defendants—much less that the Robertson defendants breached any such contract. So Jones has not stated a viable claim for breach of contract.

### 4.    Infliction of Emotional Distress

Jones also asserts claims against the Robertson defendants for negligent and intentional infliction of emotional distress. *Id.* at 18. More specifically, she says that the Robertson defendants took "illegal actions [that] . . . caused [her] severe emotional distress"—specifically citing an "attack on [her] home using a[n invalid] statute"—and that "[t]he fact [that] part of the original agreement is missing from the contract filed in the state foreclosure case is a clear showing of illegal intent to cause distress." *Id.* at 18-19. But those allegations fail to state a claim for either negligent or intentional infliction of emotional distress.

#### a.    *Negligent Infliction*

"To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021); *see Ornstein v. N.Y.C. Health &*

*Hosps. Corp.*, 10 N.Y.3d 1, 6, 881 N.E.2d 1187, 1189 (2008) (discussing this standard). Moreover, "[n]egligent infliction of emotional distress requires that the emotional distress stem from either (1) physical injury or the threat of physical injury, or (2) breach of a special duty between [the] plaintiff and [the] defendant." *Campbell*, 2012 WL 2952852, at *11.

Again, Jones fails to plead even the first of those requirements: She does not say that the Robertson defendants owed her any kind of duty of care that was breached here. Nor does it seem likely that she could: "It is well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties." *Miyamoto v. Bank of Am., N.A.*, 2020 WL 5577730, at *3 (E.D.N.Y. Sept. 17, 2020) (citation and internal quotation marks omitted); *see Guido v. Wells Fargo Bank, N.A.*, 2017 WL 5515859, at *7 (S.D.N.Y. Mar. 21, 2017) (holding that plaintiffs failed to state a claim for negligent infliction of emotional distress against bank that filed foreclosure action because, among other things, "[p]laintiffs fail[ed] to allege what duty [the bank] owed [them] in the first instance"), *aff'd*, 699 F. App'x 54 (2d Cir. 2017). And if a lender does not owe any special duty to a borrower, a lender's lawyers certainly owe no such duty.[23]

------

[23] Lawyers owe duties to their clients. *See Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 529 (S.D.N.Y. 2013) ("[A]n attorney stands in a fiduciary relationship to the client, a relationship that imposes a set of special duties." (alteration in original)). But "[a] lawyer owes a duty to a nonclient[] and can be held liable for breach[ only] in narrower circumstances"—when, among other things, "the lawyer's client is a trustee, guardian, executor, or fiduciary acting primarily to perform similar functions for the nonclient" and "the lawyer knows that appropriate action by the lawyer is necessary with respect to a matter within the scope of the representation to prevent or rectify the breach of a fiduciary duty owed by the client to the nonclient." *In re Food Mgmt. Grp., LLC*, 380 B.R. 677, 708 (Bankr. S.D.N.Y. 2008); *see also Lydian Priv. Bank v. Leff*,

Further, while this Court does not "minimize the emotional tumult" that foreclosure proceedings may cause the person subjected to them, the facts presented here are unlike the circumstances in which New York courts historically have recognized a cause of action for negligent infliction of emotional distress. Those circumstances generally involve "physical danger" or distinct kinds of emotional harm, such as that caused by the "mishandling of a corpse." *See Rosendale v. Mr. Cooper Grp. Inc.*, 2024 WL 1484248, at *15 (S.D.N.Y. Apr. 5, 2024).

Jones therefore has not stated a viable claim for negligent infliction of emotional distress against the Robertson defendants.

> b. *Intentional Infliction*

"To establish a claim for intentional infliction of emotional distress, a plaintiff must allege (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Campbell*, 2012 WL 2952852, at *11 (citation and internal quotation marks omitted). "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *A.M. ex rel. J.M. v. NYC Dep't of Educ.*, 840 F. Supp. 2d 660, 690 (E.D.N.Y. 2012*)* (citations omitted), *aff'd sub nom. Moody ex rel. J.M. v. NYC Dep't of Educ.*, 513 F. App'x 95 (2d Cir. 2013). In fact, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

---

2009 WL 1649689, at *3 n.4 (S.D.N.Y. June 9, 2009) (same). So because Jones was not in a fiduciary relationship with the bank, neither was she in one with its attorneys.

community." *Chanko v. Am. Broad. Cos.*, 27 N.Y.3d 46, 56, 49 N.E.3d 1171, 1178 (2016) (citation omitted).

As already noted, *see* note 14, *supra*, this Court lacks jurisdiction over claims for intentional infliction of emotional distress caused by the state court judgment itself—that is, the judgment of foreclosure. And even assuming that the actions of the Robertson defendants were "extreme and outrageous," Jones has not alleged that their conduct in bringing the foreclosure action—as opposed to the judgment itself—caused her "severe emotional distress." *See* Docket Item 11. In fact, courts have found similar allegations insufficient to state a claim for intentional infliction of emotional distress. *See Guido*, 2017 WL 5515859, at *6 (allegations that bank "attempted to wrongfully and unlawfully take away the [plaintiffs'] home," without any "basis in law" and when the plaintiffs owed "no debt" to the bank, did not "describe conduct that is 'atrocious' or 'utterly intolerable in a civilized community'" (citation omitted)); *cf. Worthy-Pugh*, 664 F. App'x at 22 (affirming district court's dismissal of intentional infliction of emotional distress claim because plaintiff's allegation that defendants fraudulently obtained judgment of foreclosure against her did not "allege emotional distress that was sufficiently severe to trigger liability" under similar Connecticut law standard). This Court likewise finds that Jones has failed to state a claim for intentional infliction of emotional distress here.

### E.      Mortgage Defendants' Motion to Dismiss

In sum, because the Court lacks jurisdiction over Jones's claims for wrongful foreclosure and slander of title, and because *res judicata* precludes the Court from adjudicating her remaining claims against PHH Mortgage, PHH Mortgage's motion to dismiss, Docket Item 38, is granted. Furthermore, because Jones's allegations against

the Robertson defendants fail to state a claim upon which relief can be granted, those defendants' motion to dismiss, Docket Item 37, is granted as well.

## II. AMHERST POLICE OFFICERS' MOTION TO DISMISS

In addition to her claims against the mortgage defendants, Jones asserts claims against the Amherst police defendants under 42 U.S.C § 1983.  More specifically, she alleges that despite the fact that the Sheriff's Department told her that she had 30 days to collect her things, the Amherst police defendants arrested her when she returned to her house to do just that.  Docket Item 11 at 10-11.  Read liberally, the complaint asserts claims for false arrest under section 1983 and New York state law.  *See Harley v. City of New York*, 2016 WL 552477, at *2 (E.D.N.Y. Feb. 10, 2016) ("The elements of a false arrest claim under [s]ection 1983 are substantially the same as the elements under New York State law:  [A p]laintiff must show that the defendant intentionally confined him without his consent and without justification." (citation and internal quotation marks omitted)).  But the Amherst police defendants say that because "they are entitled to qualified immunity for [Jones's] arrest," Jones's claims against them must be dismissed.  Docket Item 51-8 at 5-8.  The Court disagrees.

"Qualified immunity shields officials [including police officers] performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Rupp v. Buffalo*, 91 F.4th 623, 642 (2d Cir. 2024) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "With respect to a claim of arrest without probable cause, the doctrine shields officers from suit for damages if a reasonable officer could have believed [the] action to be lawful[] in light of clearly established law

and the information [the officer] possessed" or if "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (alteration, citation, emphasis, and internal quotation marks omitted).

"Although a defendant may assert the defense of qualified immunity in a motion to dismiss, the Second Circuit has held that it is very difficult for such a defense to succeed at the pleading stage." *Collins v. Ferguson*, 804 F. Supp. 2d 134, 140 (W.D.N.Y. 2011). As the Second Circuit recently has explained, while "qualified immunity should be resolved at the earliest possible stage in litigation[,] . . . [it] cannot be resolved . . . . prior to ascertainment of the truth of the plausible factual allegations on which a finding of qualified immunity is premised." *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020) (citations and internal quotation marks omitted). "And since qualified immunity is an affirmative defense that is typically asserted in an answer, as a general rule, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion." *Id.* (alteration, citations, and internal quotation marks omitted). Instead, qualified immunity is appropriate at the motion to dismiss stage only if "the facts supporting the qualified immunity defense . . . appear on the face of the complaint." *Pourkavoos v. Town of Avon*, 823 F. App'x 53, 59 (2d Cir. 2020) (summary order) (alterations and citation omitted).

The Amherst police defendants argue that it is undisputed that Jones had been "evicted from the property"—"in the presence of Amherst [p]olice . . . [o]fficers"—and that they therefore reasonably believed that they had probable cause to arrest her for trespassing. Docket Item 51-8 at 8. But as already noted, Jones says that she had been given permission to return to the property by the Sheriff's Department. Docket

Item 11 at 10.  Jones also says that the Sheriff's Department previously had instructed the Amherst police to "leave" her property when she was being evicted and that the Amherst police followed that instruction.  *Id.* ("The Sheriff['s] Department [a]sk[ed] the Amherst police to leave, so the Amherst police left.").  So Jones says that she explicitly was given permission to return to her home by the law enforcement officers with primary responsibility for her eviction but that she was arrested when she did that.

It is true that Jones does not explicitly allege that the Amherst police defendants knew that the Sheriff's Department had given Jones permission to return.  But in light of its obligation to afford plaintiffs, particularly *pro se* plaintiffs, all "reasonable inferences" on a motion to dismiss, *see Trs. of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 566, this Court must infer that they did.  And if the Amherst police knew that Jones had been given permission by law enforcement to return to the property, they lacked probable cause to arrest her for trespassing.  *See United States v. Pabon*, 871 F.3d 164, 175 (2d Cir. 2017) ("[O]fficers may not disregard facts tending to dissipate probable cause when directly confronted with such facts before an arrest is made." (citation and internal quotation marks omitted)).

*Palmer v. City of New York*, 564 F. Supp. 3d 221 (E.D.N.Y. 2021), illustrates the point.  In that case, the plaintiff was arrested for trespassing on premises from which a court had ordered him evicted, *id.* at 233-35, and the plaintiff even "acknowledge[d] that [he had] broke[n] a lock to reenter the [p]remises, " *id.* at 245.  But the plaintiff also said that "the arresting police officer[ had been] shown court documents reflecting a stay on [the] eviction and . . . ignored those documents before arresting [the plaintiff]."  *Id.* (alteration, citation, and internal quotation marks omitted).  Under those circumstances,

34

the court found that the plaintiff had "adequately pleaded that officers lacked probable cause to arrest him" and denied as "premature" the arresting officer's motion to dismiss. *Id.* at 245-46.  Indeed, the court explained, "[v]iewing the allegations in the complaint in the light most favorable to [the] plaintiff, [the officer] ha[d] failed to establish at this stage that an officer of reasonable competence could have concluded that probable cause supported [the plaintiff's] arrest."  *Id.* at 246.

The same analysis applies here.  If the Amherst police defendants knew that Jones had permission to return to the property to collect her belongings, as this Court must assume at this juncture, then Jones has adequately pleaded a claim for false arrest.  Likewise, because the Amherst police defendants' entitlement to qualified immunity is not apparent "on the face" of the amended complaint, the Court is unable to conclude at the pleading stage that they are entitled to qualified immunity.  Their motion to dismiss therefore is denied.

## CONCLUSION

For the reasons stated above, the motions to dismiss filed by the Robertson defendants and PHH Mortgage, Docket Items 37 and 38, are GRANTED, and the motion to dismiss filed by the Amherst police defendants, Docket Item 51, is DENIED. Jones's motion to strike, Docket Item 68, also is DENIED.  The Clerk of the Court shall remove Robertson PLLC, Boriskin, Sandler, and PHH Mortgage as defendants.  The Amherst police defendants shall answer Jones's amended complaint **within 30 days of the date of this order**.

SO ORDERED.

Dated:   July 15, 2024
        Buffalo, New York


                                 */s/ Lawrence J. Vilardo*
                                 LAWRENCE J. VILARDO
                                 UNITED STATES DISTRICT JUDGE